## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

In re:

JEAN LARAINE ELLIS,                              Case No. 08-16339-RGM
                                                 (Chapter 13)
      Debtor.

### MEMORANDUM OPINION

THIS CASE is before the court on the debtor's motion to withdraw her chapter 13 petition. The trustee objected to the withdrawal although he recognized that the debtor had a right to dismiss her case.[1] The court orally denied the motion at the hearing but dismissed the case under §1307(b).

Jean Laraine Ellis filed a voluntary petition in bankruptcy pursuant to chapter 13 of the United States Bankruptcy Code in this court on October 14, 2008. The principal purpose of the filing was to discharge a property settlement claim of her former husband, Jeffrey W. Ellis.

The parties were divorced on March 31, 2006, by the Circuit Court of Fairfax County, Virginia. The Final Decree of Divorce valued their marital home at $900,000 and found it encumbered by a lien in the amount of $687,000. The court awarded the home to the debtor. She was ordered to refinance the property within 120 days and pay Mr. Ellis $100,000 from the proceeds of the refinance. On November 7, 2007, the Circuit Court found that she refinanced the property on July 26, 2006, but violated the Final Decree of Divorce by

> failing and refusing to turn over any portion of the net sum of $88,000 of the proceeds from the refinance at the time of closing. Said sum is [Mr. Ellis'] entitlement for his portion of the equity in the former marital residence.

---

[1] The trustee orally objected to the motion at the hearing. However, without explanation he endorsed an order submitted by the debtor withdrawing the petition.

*Jean Ellis v. Jeffrey W. Ellis,* Circuit Court of Fairfax County, Virginia, CL No. 2006-6227, Order entered November 7, 2007. The Circuit Court accordingly found the debtor in willful contempt and continued the case to April 4, 2008, for a review of the status of the case and a determination of punishment, if any, to be imposed on the debtor for her contempt. The matter actually came before the court on April 30, 2008, at which time the parties entered into an Agreed Order that ostensibly provided the means for resolving the matter. The debtor's obligation to Mr. Ellis was reduced by the balance of future spousal support Mr. Ellis owed the debtor. The net amount due from the debtor to Mr. Ellis was agreed to be $49,184 and was agreed to be paid with interest in 48 monthly installments of $1,024.66 commencing on July 15, 2008. Mr. Ellis agreed to release his *lis pendens* as soon as possible and that the Agreed Order would not operate as a judgment lien on the debtor's property unless she failed to make a payment for a period of 90 days.[2]

Prior to her agreement with Mr. Ellis, the debtor received an offer for the purchase of the former marital home for $860,000. It was dated March 30, 2008, and was signed by the purchasers on March 31, 2008.[3] The debtor obtained an appraisal of the property dated April 30, 2008, but it was only for $796,000. The contract was amended on May 22, 2008, and the sales price was reduced to the appraised value. The loan pay-off and costs of sale exceeded the sales price but the lender agreed to a short sale, that is, to accept less than the amount due to it from the settlement to release its lien and, thereby, allow the contract to close.[4] The lender stipulated that the debtor was to receive no proceeds from the closing and she did not. The contract closed on May 30, 2008.

---

[2]Mr. Ellis transferred his interest in the former marital property to the debtor at the time of the refinance.

[3]The record does not reflect when the debtor accepted the contract. The copy of the contract placed into evidence was not executed by the debtor. It is likely that she knew of it and accepted it shortly after the offer was made.

[4]It agreed to accept $751,620.20. The debtor scheduled the deficiency at $32,000.

At the same time that the debtor was seeking a short sale of the former marital home, she entered into a contract to purchase another home. That contract was dated May 28, 2008. The contract required a down payment of $11,250 of which she made a deposit on May 28, 2008, of $4,000. Her purchase closed on July 1, 2008, and she paid an additional $8,291.60 at closing. In all, she paid $12,291.60 in cash and borrowed $368,231.00 for the purchase of the house. The cash payment was funded in part from a $17,500 loan from her Thrift Savings Plan on June 3, 2008. The Thrift Saving Plan loan was amortized over 15 years with bi-weekly payments of $59.16. The interest rate was 3.75%.

The debtor did not make her first scheduled payment to Mr. Ellis under the Agreed Order. It was due on July 15, 2008. Ninety days later, when the Agreed Order could become a judgment lien on her real property, was October 13, 2008, Columbus Day, a Monday holiday. She filed the present chapter 13 bankruptcy case the following day, October 14, 2008.

At the time that the debtor filed her petition, she was current on all of her obligations except her obligation to Mr. Ellis and an outstanding balance due to her divorce attorney which she scheduled at $6,000. She also scheduled the deficiency owed to the mortgage company that had agreed to the short sale. No demand had been made for payment. At her confirmation hearing she was not sure whether the deficiency was owed or had been forgiven. In her motion to withdraw her petition, she stated that the mortgage company had cancelled the balance due to her. "Accordingly," she stated, "[the mortgage company] will not pursue Ms. Ellis on the obligation." Motion to Withdraw Pleading, ¶10 (Docket Entry 63, filed March 19, 2008).

It is clear that had the debtor made any reasonable effort to pay Mr. Ellis during the two and a half years before she filed this case, she would have been able to pay him all that he was owed.

3

Instead, her chapter 13 plan provided for payment of approximately 12% of Mr. Ellis' claim over five years. The debtor's chapter 13 plan was denied confirmation because she did not devote all of her net disposable income to the plan.

Mr. Ellis moved to dismiss the case for having been filed in bad faith. The hearing on his motion and the confirmation of the debtor's chapter 13 plan occurred together. There was substantial evidence to support his allegation of bad faith. The court took the motion to dismiss under advisement pending the filing of a modified plan which could have paid his claim in full. The court expressly stated that it would consider the terms of the modified plan in determining whether Mr. Ellis's motion to dismiss the case as a bad faith filing would be granted.

The debtor never filed an amended plan. Instead, she reached a settlement with Mr. Ellis. Neither the terms of the settlement nor the source of the debtor's funds was disclosed to the court. The debtor now asks that her petition be withdrawn, not dismissed. She states that withdrawal is preferable because it will have a less negative impact on her credit rating and her security clearance. No evidence was submitted supporting her assertion that withdrawing rather than dismissing her petition would have any effect on her credit rating or her security clearance.

It is quite clear that this case was filed to frustrate Mr. Ellis's claim and that it was a continuation of the debtor's protracted efforts to avoid payment during a period when she could have paid the obligation in full. This is illustrated, in part, by the fact that once she settled the matter with Mr. Ellis, she moved to withdraw the petition, the petition serving no further useful purpose for her.

The Bankruptcy Court is open to all. Relief is intended to assist the honest debtor obtain a fresh start. Along with the benefits of a fresh start come the burdens. There is no reason in this case

4

to lessen the burdens on Ms. Ellis, if in fact they are lessened by a withdrawal, where there are clear indications of the use of bankruptcy in bad faith. *See In re Kestell*, 99 F.3d 146 (4th Cir. 1996) (dismissing chapter 7 case as an abuse because of the debtor's stated intention to pay every debt except support and equitable distribution obligation owed to his former spouse); *Neufeld v. Freeman (In re Freeman),* 794 F.2d 149, 153 (4th Cir.1986) (consideration of the non-dischargeable nature of a claim in plan confirmation "ensures against manipulation of the statute by debtors who default on [non-dischargeable obligations] and who subsequently seek refuge in Chapter 13 in order to avoid, at minimal cost, a nondischargeable debt."); *In re Shaheen*, 268 B.R. 455 (Bankr.E.D.Va. 2001) (dismissing chapter 13 case with prejudice to re-filing for one year where the debtor used the bankruptcy process to hinder and delay one creditor from collecting on a judgment while all other creditors were being paid and no financial event precipitated the filing); *In re Herndon*, 218 B.R. 821 (Bankr.E.D.Va. 1998) (dismissing chapter 13 case for being filed in bad faith where it was essentially a two-party dispute, debtor filed on eve of state court trial, and proposed chapter 13 plan paid only six percent of claim).

The Bankruptcy Code does not speak of a right to withdraw a petition. Section 1307(b) speaks only of a right to dismiss a petition under certain circumstances. Even if the court could grant a motion to withdraw a petition, and even if the difference between withdrawal and dismissal were meaningful, withdrawal is not appropriate in this case. The court will deny the motion to withdraw, but will treat is as a motion to dismiss under §1307(b) and dismiss the case.

Alexandria, Virginia
June 2, 2009

/s/ Robert G. Mayer
Robert G. Mayer
United States Bankruptcy Judge

Copy electronically to:

Richard J. Stahl
Thomas P. Gorman

15201